USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/10/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
CERTAIN UNDERWRITERS AT LLOYD'S, :
LONDON, et al., :
:
                Appellants, : 20-cv-1645 (LJL)
:
    -v- : OPINION & ORDER
:
ROWENA DRENNEN, FLORA GASKIN, ROGER :
TURNER, CHRISTIE TURNER, JOHN PICARD and :
REBECCA PICARD, individually and as the :
representatives of the KESSLER SETTLEMENT :
CLASS, :
:
STEVEN MITCHELL and RUTH MITCHELL, :
individually and as the representatives of the MITCHELL :
SETTLEMENT CLASS, and :
:
RESCAP LIQUIDATING TRUST, :
:
                Appellees. :
:
-----------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

    Certain insurers who were defendants to the above-captioned adversary proceedings in the Bankruptcy Court ("Defendant Insurers")[1] seek leave to appeal, pursuant to 28 U.S.C. § 158(a)(3) and Federal Rules of Bankruptcy Procedure 8002 and 8004, from the Memorandum

---

[1] The Defendant Insurers include Those Certain Underwriting Members at Lloyd's, London and Those Companies Whose Names are Severally Subscribed to Policy No. FD0001142 ("Primary Underwriters"), Those Certain Underwriting Members at Lloyd's, London and Those Companies Whose Names are Severally Subscribed to Policy No. FD0001144, Twin City Fire Insurance Company, Continental Casualty Company, Clarendon National Insurance Company, Swiss Re International S.E. (formerly known as SR International Business Insurance Company Ltd.), Steadfast Insurance Company, St. Paul Mercury Insurance Company, and North American Specialty Insurance Company.

of Decision of Hon. Sean H. Lane, dated December 27, 2019 and entered January 14, 2020. For the reasons stated, the motion is DENIED.

## BACKGROUND

At issue in this appeal is language in the policy titled the Combined Directors and Officers Liability and Company Liability (including Employment Practices Liability), Errors and Omissions Liability, Pension Trust Liability, and Mortgagee Errors and Omissions Insurance Policy, No. 823/FD0001142 (the "Primary Policy") that certain of the Defendant Insurers issued to General Motors Corporation. Other Defendant Insurers also issued excess policies that mirror the Primary Policy (together with the Primary Policy, the "Policies") with respect to the Primary Policy's insurance clause, the relevant coverage exclusions under another clause ("Clause III.C."), and the definitions in the Policies. The Policies cover claims made against General Motors Corporation or its subsidiaries between December 15, 2000 and December 15, 2003. One of those subsidiaries is Residential Funding Company, LLC ("RFC"), which filed for protection under Chapter 11 of the Bankruptcy Code in May 2012.

Between 2000 and 2003, during the policy years at issue and before the bankruptcy filing, RFC was named as a defendant in numerous class action lawsuits. The lawsuits arose out of RFC's business of purchasing closed mortgage loans on the secondary market and then securitizing those loans to sell to investors. The plaintiffs in those actions were borrowers who claimed that various state and federal lending laws were violated in the origination of their second mortgage loans by virtue of fees that they paid to the originating banks and that RFC was liable for those violations. RFC timely sought coverage under the Policies for liability as well as for defense costs.

Prior to RFC's Chapter 11 filing, RFC paid $15.6 million in compensatory damages and related attorneys' fees to one set of the class action plaintiffs (the "Mitchell Plaintiffs") and

reached a settlement on the remaining punitive damages claim for $14.5 million ("Mitchell Settlement"). RFC had not paid any portion of the Mitchell Settlement prior to its Chapter 11 filing.

During the bankruptcy proceedings, in November 2013, RFC reached a settlement with a second set of plaintiffs (the "Kessler Plaintiffs" and together with the Mitchell Plaintiffs, "Plaintiffs"), which provided those plaintiffs with a $300 million allowed claim against RFC's bankruptcy estate ("Kessler Settlement"). As part of the Kessler Settlement, RFC's rights under the applicable insurance policies issued to RFC by the Defendant Insurers were assigned to the Kessler Plaintiffs and to a liquidating trust for the purpose of liquidating and distributing RFC's remaining assets to its unsecured creditors (the "Liquidating Trust").

In December 2013, the Court approved a Chapter 11 plan (the "Chapter 11 Plan") in which it also established ResCap Liquidating Trust as the Liquidating Trust. It also approved the terms of the Mitchell Settlement and the resulting allowed claim against RFC's bankruptcy estate in the amount of $14.5 million in punitive damages, and it assigned the Mitchell Plaintiffs the right to pursue the Defendant Insurers for any insurance proceeds under the applicable policies to satisfy that claim. Additionally, the Chapter 11 Plan assigned to the Liquidating Trust any rights of RFC to recover $6.1 million from the Defendant Insurers in costs incurred by RFC in defense against the Mitchell Plaintiffs, as well as RFC's rights to payment from the Defendant Insurers for the $15.6 million in compensatory damages paid by RFC to the Mitchell Plaintiffs prior to the bankruptcy filing.

The adversary proceeding in the instant action grew out of the claims by the Plaintiffs and by the Liquidating Trust under the Policies. Plaintiffs seek coverage of their allowed claims under their respective settlements as losses under the insurance policies. The Liquidating Trust

3

seeks coverage for RFC's payment of the compensatory damages to the Mitchell Plaintiffs. The Defendant Insurers argue that coverage for the liability was excluded under one or both of two exclusions under Clause III.C. in the Policies.

## PROCEDURAL HISTORY

Pursuant to a joint stipulation in February 2018, Bankr. Dkt. No. 336, the parties filed cross-motions for partial summary judgment regarding whether either or both of the exclusions precluded coverage of Plaintiffs' claims, Bankr. Dkt. Nos. 337, 338, 340.[2] On December 27, 2019, the Bankruptcy Court issued the decision holding that neither exclusion applied to bar Plaintiffs' claims, and, on January 14, 2020, the Bankruptcy Court entered an order granting Plaintiffs' partial motions for summary judgment and denying Defendant Insurers' partial motion for summary judgment. Bankr. Dkt. Nos. 388, 396. The Bankruptcy Court did not address the dispute between the Liquidating Trust and Defendant Insurers as to defense costs. That dispute was not a subject of the summary judgment briefing.

On January 28, 2020, the Bankruptcy Court extended the time to move for leave to appeal until February 18, 2020. Bankr. Dkt. No. 403. Defendant Insurers filed their motion on February 18. Bankr. Dkt. No. 415.

## DISCUSSION

Section 158(a)(3) of Title 28 gives district courts jurisdiction to hear appeals from interlocutory orders and decrees from bankruptcy courts only "with leave of the court." 28 U.S.C. § 158(a)(3). Over the years, in determining whether to grant leave to appeal, courts have consistently applied the statutory standards set forth in 28 U.S.C. § 1292(b) for interlocutory

---

[2] Unless otherwise specified, references to Dkt. No. are to filings in the above-captioned proceeding, 20-cv-1645 (LJL) in the United States District Court for the Southern District of New York. References to Bankr. Dkt. No. are to filings in the adversary proceeding Adv. No. 15-01025 (SHL) in the United States Bankruptcy Court for the Southern District of New York.

appeals to the United States Court of Appeals. *See, e.g.*, *In re Lehman Brothers Holdings Inc.*, 2019 WL 2023723, at *3 (S.D.N.Y. May 8, 2019); *MF Global Holdings Ltd. v. Allied World Assurance Co. Ltd.*, 2017 WL 2819870, at *2 (S.D.N.Y. June 29, 2017) (Sweet, J.).

28 U.S.C. § 1292(b) provides that leave to appeal should be granted only if (1) the appeal "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Lehman Holdings*, 2019 WL 2023723, at *3 (quoting 28 U.S.C. § 1292(b)). "The party seeking leave to appeal bears the burden of demonstrating that all three criteria have been met." *Id.* Moreover, that party must show "'exceptional circumstances' to 'overcome the general aversion to piecemeal litigation' and 'justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *MF Global Holdings*, 2017 WL 2819870, at *2 (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave*, 921 F.2d 21, 24 (2d Cir. 1990)); *see In re Reifler*, 2018 WL 3212464, at *5 (S.D.N.Y. June 28, 2018) (stating same). "Even when all three criteria are met, a district court retains 'unfettered discretion' to deny leave to appeal for 'any reason,' including judicial economy." *In re Lehman Holdings*, 2019 WL 2023723, at *3 (quoting *Klinghoffer*, 921 F.2d at 24); *see also MF Global Holdings*, 2017 WL 2819870, at *2.

This is not one of those exceptional cases that justifies departure from the judicial policy against piecemeal appeals. The Court holds that Defendant Insurers have not met their burden to demonstrate any of the three criteria.

This appeal concerns contract interpretation of the Policies, an issue that does not typically present a pure "question of law" that is controlling. "While the meaning of a contract generally is considered to be a question of law for the court, a question of contract interpretation

typically is not a 'controlling question of law' that serves as a basis for interlocutory appeal." *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 426 F. Supp. 2d 125, 128 (S.D.N.Y. 2005); *see, e.g.*, *Chenault v. Gen. Motors LLC*, 2017 WL 698387, at *4 (S.D.N.Y. Feb. 21, 2017) ("[M]atter of contract interpretation," the extent to which the sale order and sale agreement barred movants claims was "not a 'question of law' within the meaning of Section 1292(b) [and] may not serve as a basis for this Court to hear an interlocutory appeal"); *Catskill Dev., LLC v. Park Place Entm't Corp.*, 206 F.R.D. 78, 94 (S.D.N.Y. 2002) ("Differences over contract construction are not the sort of 'controlling question of law' that normally gives rise to interlocutory certification.").

Nor have Defendant Insurers shown that "there is substantial ground for difference of opinion." To determine that "there is substantial ground for a difference of opinion" as to a question of law, this Court must have "a genuine doubt as to whether the bankruptcy court applied the correct legal standard." *In re MF Global Holdings, Ltd.*, 2012 WL 4763087, at *5 (S.D.N.Y. Oct. 5, 2012) (quoting *MCI WorldCom Commc'ns v. Commc'ns Network Int'l, Ltd.*, 358 B.R. 76, 79 (S.D.N.Y. 2009)). The papers before the Court at this stage of the proceedings do not leave it with such genuine doubt.

In its decision, the Bankruptcy Court rejected Defendant Insurers' argument that the two exclusion clauses in Clause III.C. that excluded claims based on fees received by the Assured, the "Return of Fees Exclusion" and the "Mortgage Fee Claim Exclusion" (together, the "Fee Exclusions"), precluded coverage for judgments or settlements with respect to the underlying claims by virtue of language in the so-called "Deemer Clause." The "Deemer Clause" defined "Assured" "[a]s used in the Exclusions set forth in Clause III.C." to include "any person or entity for whose conduct an Assured is legally responsible in rendering or failing to render Professional

Services." Defendant Insurers argued that the "Deemer Clause" together with the Fee Exclusions excluded the underlying claims because—notwithstanding that RFC did not receive fees—RFC was "legally responsible" for the originating banks who did receive the fees.

The Bankruptcy Court held that, under the plain language of the Policies, the Return of Fees Exclusion did not bar coverage. It reasoned that the Return of Fees Exclusion referred to "the Assured," not "an Assured," and the use of the article "the" meant that the Return of Fees Exclusion applied only when "the" Assured seeking coverage had also engaged in the excluded conduct and received the fees. In so holding, the Bankruptcy Court looked at principles of insurance contract interpretation in both New York and Michigan courts, which have held that "the insured" is limited to only the insured that engaged in the excluded conduct.

The Bankruptcy Court also held that the Mortgage Fee Claim Exclusion as drafted applied only to the "Professional Liability Assured," a category that did not include the originating banks or those for whom RFC was legally responsible. Because the Mortgage Fee Claim Exclusion did not apply to all "Assureds," the "Deemer Clause" did not help the Defendant Insurers. The Bankruptcy Court concluded that this reading of the clause gave "consistent effect to the plain meaning of the language and the definitions of the terms contained in the Policy." Bankr. Dkt. No. 388 at 28-29. The Bankruptcy Court also rejected Defendant Insurers' argument that such an interpretation would render the Deemer Clause surplusage, instead finding that the Deemer Clause would have application to other provisions in the Policies and that this interpretation gave "effect to the purposeful distinctions for when different terms are used—and not used—in the Policies." Bankr. Dkt. No. 388 at 31.

As described above, the Bankruptcy Court applied standard principles of contract interpretation to the language of the agreement between the parties and reached a result that, at

first glance, appears to be reasonable. Defendant Insurers disagree with the Bankruptcy Court's application of those principles, not with the principles themselves. Although reasonable arguments could be made on both sides regarding the Bankruptcy Court's application, that is insufficient to show "substantial ground for difference of opinion" such that it would be appropriate for this Court to accept an appeal under 28 U.S.C. § 1292(b). The Court leaves for another day, on more complete briefing by the parties, whether those "rulings were definitively correct." *In re MF Global Holdings*, 2012 WL 4763087, at *5. It is sufficient to say at this point that Defendant Insurers have not persuaded the Court that "there is substantial reason to doubt the legal analysis undertaken by the bankruptcy court." Dkt. No. 3 at 11.

Defendant Insurers also have not met their burden to demonstrate that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Defendant Insurers have highlighted several other defenses to coverage in their bankruptcy filings, Bankr. Dkt. No. 413, which—if resolved in their favor—could obviate the need for the Court to address the contract issues here at all. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 1992 WL 558996, at *1 (S.D.N.Y. Nov. 19, 1992). And although there is some force to their argument that a decision reversing the Bankruptcy Court would dismiss the Mitchell and Kessler Plaintiffs' claims against seven of the eight Defendant Insurers, Dkt. No. 3 at 20, even that reversal would not "materially advance" the ultimate termination of the litigation because the issue of defense costs would remain with respect to the Liquidating Trust's claims against all Defendant Insurers. That issue remains hotly disputed and, accordingly, even a resolution of this appeal in favor of Defendant Insurers would not result in termination of the litigation. *See Genentech, Inc. v. Novo Nordisk A/S*, 807 F. Supp. 97, 100 (S.D.N.Y. Dec. 11,

8

1995) ("[T]he court must be of the opinion that immediate appeal of an order will literally accelerate the action as a whole.").

## **CONCLUSION**

For the reasons stated, the motion for leave to appeal is DENIED.

SO ORDERED.

Dated: April 10, 2020
      New York, New York

LEWIS J. LIMAN
United States District Judge